IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TUSER E., <br><br> Petitioner, <br><br> v. <br><br> ORLANDO RODRIGUEZ, <br><br> Respondent. | HON. JOHN MICHAEL VAZQUEZ <br><br> Civil Action <br> No. 18-4801 (JMV) <br><br> **OPINION** |

**VAZQUEZ, District Judge:**

**I. INTRODUCTION**

Petitioner Tuser E.[1] has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his prolonged immigration detention. (ECF No. 1.) For the reasons stated herein, the Court will grant his petition and order the immigration court to hold a bond hearing.

**II. BACKGROUND**

Petitioner is a native and citizen of Bangladesh. (*See* ECF No. 7-1 at PageID: 59.) Petitioner was previously admitted to the United States as a non-immigrant student on September 6, 2013.[2] Petitioner appears to have continuously remained in the United States from that time until July 9, 2017, when he left this country. (*See id.*) It is clear that Petitioner's legal authorization

---

[1] The United States Judicial Conference's Committee on Court Administration and Case Management has identified certain privacy concerns associated with the personal information often filed in § 2241 habeas cases. The Court will accordingly identify the petitioner only by his first name and last initial in this Opinion and the accompanying Order.

[2] The parties have provided limited information regarding the circumstances of Petitioner's prior admission to the United States in 2013. That said, no further information on Petitioner's 2013 admission is needed to appropriately consider and resolve Petitioner's current habeas petition.

to remain in the United States was revoked, lapsed, or otherwise expired on or before July 9, 2017.[3] (*Id.*) It is also clear that Petitioner's authorization was never thereafter reinstated, *i.e.*, at no point after July 9, 2017 was Petitioner authorized to enter or remain in the United States.

On July 25, 2017, approximately two weeks after Petitioner departed from this country on July 9, 2017, Petitioner returned to the United States on a flight which disembarked at John F. Kennedy International Airport ("JFK"). (*See* ECF No. 6 at PageID: 22.) Upon his arrival at JFK, Petitioner applied for re-admission to the United States. (*Id.*) Instead of being admitted, Petitioner was taken into custody by the United States Department of Homeland Security ("DHS"). Petitioner has been detained at the Elizabeth Detention Center in Elizabeth, New Jersey ever since.

On July 31, 2017, DHS served Petitioner with a Notice to Appear informing him, among other things, that he was facing removal from the United States pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant who was not in possession of a valid entry document at the time he applied for admission on July 25, 2017,. (*Id.*) Between August 2017 and May 2018, Petitioner attended numerous hearings in immigration court concerning his removability. (*See*, *generally*, Burgus Decl., ECF No. 6 at PageID: 29-31.) At an October 12, 2017 hearing, Petitioner filed an application seeking relief from removal. (*Id.* at ¶ 8.) The immigration court originally scheduled a hearing on that application for November 9, 2017. (*Id.* at ¶¶ 8-18.) That hearing was adjourned and carried numerous times at that request of DHS, who consistently advised the

---

[3] The parties have provided limited information about Petitioner's pre-July 9, 2017 loss of authorization to remain in the United States. Indeed, neither party has provided the exact date on which that authorization was revoked. Likewise, while it appears that Petitioner lost this authorization because he failed to attend agreed-upon schooling between September 13, 2013 and May 2014 and because he engaged in unauthorized work from May 2014 through June 2017. (*see* ECF No. 7-1 at PageID: 59), neither party has expressly confirmed that fact. That said, these additional details are immaterial for purposes of resolving Petitioner's current habeas claims.

immigration court that it needed additional time to obtain Petitioner's records and complete its investigation. (*Id.*) The immigration court also adjourned and continued the hearing several times *sua sponte*. (*Id.*) All told, the immigration court and DHS were responsible for five months of hearing adjournments between November 9, 2017 and May 22, 2018, when the immigration court completed all necessary proceedings related to Petitioner's application for relief from removal. (*Id.*)

Thereafter, on or about July 9, 2018, the immigration court ordered Petitioner removed to Bangladesh. (*See* Aug. 23, 2018 Medina Decl. ¶ 7, ECF No. 6 at PageID: 27.) Petitioner has appended a portion of the Immigration Judge's ("IJ's") written decision to his reply. (ECF No. 7-1 at PageID: 58-59.) The appended partial copy of the IJ's decision indicates that during an October 3, 2017 hearing, Petitioner acknowledged that he did not have a valid entry document when he applied for admission to the United States on July 25, 2017. (*Id.* at PageID: 59.) In other words, Petitioner conceded his removability to the immigration court. (*Id.*) In addition, the IJ found that Petitioner was not entitled to asylum or withholding of removal under the Immigration and Nationality Act, nor was he entitled to protection under the Convention Against Torture. (*Id.*)

Petitioner appealed the IJ's rulings to the Board of Immigration Appeals ("BIA") on August 6, 2018. (*See* Medina Decl. ¶ 8, ECF No. 6 at PageID: 27.) Petitioner's appeal to the BIA remains pending. (*See id.*)

On the same day Petitioner filed his BIA appeal, *i.e.*, August 6, 2018, DHS notified Petitioner that he was being considered for release on parole. (ECF No. 7-2 at PageID: 124.) On or about August 31, 2018, DHS informed Petitioner that he would not be paroled. (*Id.* at PageID: 128.)

Petitioner filed his habeas corpus petition on or about March 28, 2018 (hereinafter, the "§ 2241 Petition"). (ECF No. 1.) Respondent (hereinafter the "Government") filed its answer to the § 2241 Petition on August 23, 2018. (ECF No. 6.) Petitioner filed a reply on or about September 19, 2018. (ECF No. 7.)

### III. LEGAL STANDARD

Habeas relief may be extended to an immigration detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Maleng v. Cook*, 490 U.S. 488, 490 (1989). The Court has jurisdiction in this habeas matter because: (i) Petitioner is currently detained within this Court's jurisdiction by a custodian within its jurisdiction; and (ii) Petitioner, by way of his § 2241 Petition, claims that his continued detention violates due process. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

### IV. ANALYSIS

**A. The Parties' Habeas Arguments**

Petitioner contends that his ongoing detention violates his right to due process. (*See*, *generally*, ECF No. 7.) Petitioner requests that the Court order a bond hearing in which DHS bears the burden of demonstrating that Petitioner's continued detention is appropriate. (*Id.* at PageID: 44 (citing *Diop v. ICE/Homeland Security*, 656 F.3d 221, 232 (3d Cir. 2011)).) The Government argues that Petitioner's § 2241 Petition should be denied because DHS "has lawfully detained Petitioner under 8 U.S.C. § 1225(b)(2), which dictates that if an arriving alien seeking admission is determined not to be clearly and beyond a doubt entitled to be admitted, the alien [must] be detained throughout the period in which he pursues his claim for relief from removal." (ECF No.

4

6 at PageID: 14 (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 838 (2018)).) The Court agrees that Petitioner is being detained pursuant to 8 U.S.C. § 1225(b). This determination frames the Court's analysis.

**B. The Statutory Framework Governing Arriving Aliens, Including Petitioner**

An arriving alien, like Petitioner, who attempts to enter the United States at a designated point of entry (such as an airport) is inspected by an immigration officer upon arrival. *See Clark v. Martinez*, 543 U.S. 371, 373 (2005) (citing 8 U.S.C. § 1225(a)(3)). Unless that arriving alien is "clearly and beyond a doubt entitled to be admitted," he will undergo removal proceedings to determine admissibility. *See id.* (quoting 8 U.S.C. § 1225(b)(2)(A)); *see also Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 425-26 (3d Cir. 2016) (aliens "arriving in the United States" are subject to expedited removal if an immigration officer determines they are inadmissible due to a lack of immigration papers) (citing 8 U.S.C. § 1225(b)(1)(A)(i) & (iii)).

If an alien who arrives without immigration papers indicates to his inspecting immigration officer that he fears prosecution or torture if returned to his country, that officer "shall refer the alien for an interview by an asylum officer" to determine if the alien "has a credible fear of persecution [or torture]." 8 U.S.C. § 1225(b)(1)(A)(ii) & (B)(ii); 8 C.F.R. § 208.30(d). "[I]f the interviewing asylum officer [subsequently] . . . concludes that the alien possesses a credible fear of persecution or torture, the alien is referred for non-expedited removal proceedings under 8 U.S.C. § 1229a, 'during which time the alien may file an application for asylum and withholding of removal.'" *Castro*, 835 F.3d at 426 n.4 (quoting 8 C.F.R. § 1208.30(g)(2)(iv)(B)).

The foregoing procedures were utilized when Petitioner applied for admission to the United States on July 25, 2017. Petitioner's flight disembarked at JFK on July 25th, at which time Petitioner was denied admission because he lacked appropriate immigration papers. (*See* ECF No.

6 at PageID: 22.) In addition, the record shows that (i) an asylum officer found that Petitioner demonstrated a credible fear of persecution or torture in his home country; (ii) Petitioner subsequently underwent formal removal proceedings before an IJ during which he raised formal asylum-related claims; (iii) the IJ denied those asylum-related claims and ordered Petitioner's removal to Bangladesh; and (iv) that Petitioner's appeal of the IJ's decision is now pending before the BIA. (*See id.* at PageID: 15, 22; ECF No. 7 at PageID: 59.) These facts demonstrate that Petitioner is now detained pursuant to 8 U.S.C. § 1225(b)(2). *See id.* at § 1225(b)(2)(A) ("if the examining immigration officer determines that [an arriving alien] is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal] proceeding[s].").

**C. There Is No Statutory Basis To Order Petitioner's Release Or A Bond Hearing**

The statute governing Petitioner's present detention states that arriving aliens "*shall* be detained for [removal] proceeding[s.]" *See* 8 U.S.C. § 1225(b)(2)(A) (emphasis added). On February 27, 2018, the United States Supreme Court issued its decision in *Jennings v. Rodriguez*, 138 S. Ct. 830. *Jennings*, holds, *inter alia*, that the language within § 1225(b) "mandate[s] detention of applicants for admission until [removal proceedings] have concluded." *Id.* at 842. "Once these proceedings end, detention under § 1225(b) must end as well. Until that point [however], nothing in the statutory text imposes any limit on the length of detention." *Id.*; *see also Mancia-Salazar v. Green*, No. 17-147, 2017 WL 2985392, at *2 (D.N.J. July 13, 2017) (the statutory language of "§ 1225(b)(2)(A) essentially requires mandatory detention for aliens."). *Jennings* precludes this Court from reading an implicit time limitation on the permissible length of detention under 8 U.S.C. § 1225(b); instead, § 1225(b)'s plain language authorizes Petitioner's mandatory detention "until [his removal proceedings] have concluded." *See Jennings*, 138 S. Ct. at 842-44.

Aliens detained pursuant to § 1225(b) likewise have no statutory right to a bond hearing. *Mancia-Salazar*, 2017 WL 2985392, at *2 (citations omitted); *see also* 8 C.F.R. § 1003.19(h)(2)(i)(B); *accord Jennings*, 138 S. Ct. at 842 ("neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."). Indeed, the only statutory parole relief available to § 1225(b) detainees is set forth in 8 U.S.C. § 1182(d)(5)(A); that provision authorizes the Attorney General, through DHS, to parole such detainees into the United States if "urgent humanitarian reasons or significant public benefit" so warrant. *See* 8 U.S.C. § 1182(d)(5)(A); *accord Mancia-Salazar*, 2017 WL 2985392, at *2; *see also Jennings*, 138 S. Ct. at 844 (this "express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released."). There is accordingly no statutory language within or related to § 1225(b) that authorizes this Court to order Petitioner's outright release or a bond hearing.

**D. Petitioner May Nonetheless Be Entitled to Habeas Relief**

*Jennings* precludes the Court from granting habeas relief to Petitioner based on the statutory language within 8 U.S.C. § 1225(b); *Jennings* does not, however, prevent the Court from awarding habeas relief where Petitioner's detention has become so unduly prolonged that it renders § 1225(b) unconstitutional as applied to him. Indeed, post-*Jennings* it remains true (1) that "detention which is so unreasonable as to amount to an arbitrary deprivation of liberty cannot comport with the requirements of the Due Process Clause"; (2) the "constitutionality of detention . . . without a bond hearing is a function of the length of the detention and the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues"; and (3) "at a certain point . . . the burden to an alien's liberty outweighs the Government's interest in detention without bond[.]" *Dryden v. Green*, 321 F. Supp. 3d 496, 502

(D.N.J. 2018) (citing, *inter alia*, *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 474-75 (3d Cir. 2015); *Diop*, 656 F.3d at 232-234) (internal citations omitted). Accordingly, Petitioner will be entitled to habeas relief if "his ongoing detention is so unreasonable or arbitrary that it has actually violated *his* rights under the Due Process Clause." *Dryden*, 321 F. Supp. 3d. at 502 (emphasis added). This inquiry – and the Court's ultimate determination on the reasonableness of Petitioner's ongoing detention – is "highly fact specific[.]" *Id.* (citing *Chavez-Alvarez*, 783 F.3d at 474-75).

As an initial matter, it must be noted that arriving aliens, like Petitioner, who are denied admission to the United States and taken into custody by DHS at a port of entry, are, as a matter of law, deemed to have never entered the United States; instead, they are "legally treated as if stopped at the border[.]" *Mancia-Salazar*, 2017 WL 2985392, at *3. As a result, Petitioner is "entitled to something less than the full array of rights usually conferred by the Due Process Clause." *Id.*; *accord Zadvydas*, 533 U.S. at 693 ("[C]ertain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders."); *Damus v. Tsoukaris*, No. 16-933, 2016 WL 4203816, at *4 (D.N.J. Aug. 8, 2016) ("[A]n alien who is legally considered to remain at the border has no right of entry into this country and . . . may be held for a greater length of time before his continued detention raises Due Process concerns").

Nevertheless, § 1225(b) detainees still "possess some rights under the Due Process Clause which may be impugned should detention under the statute become unduly and unreasonably prolonged." *Otis V. v. Green*, No. 18-742, 2018 WL 3302997, at *6 (D.N.J. July 5, 2018). Indeed, Petitioner, like all "arriving aliens detained pre-removal pursuant to § 1225(b)[, has] a due process right to an individualized bond consideration once it is determined that the duration of [his] detention has become unreasonable." *Singh v. Sabol*, No. 16-2246, 2017 WL 1659029, at *4 (M.D.

Pa. Apr. 6, 2017) (citing *Ahad v. Lowe*, 235 F. Supp. 3d 676, 688 (M.D. Pa. 2017), *report and recommendation adopted*, 2017 WL 1541847 (M.D. Pa. Apr. 28, 2107).

At present, Petitioner has been detained under § 1225(b)(2) for nearly twenty months. This period of detention includes the entire period during which his immigration proceedings before an IJ were pending; those proceedings only concluded on July 9, 2018. It is undisputed that the IJ's resolution of Petitioner's immigration claims were delayed for five-months as a result of numerous adjournments requested by the Government and the IJ's *sua sponte* hearing adjournments. Petitioner's appeal of the IJ's rulings is now pending before the BIA. Petitioner filed his BIA appeal on August 6, 2018, and it is unclear when the BIA will render its decision. It further appears that the Government intends to detain Petitioner throughout the pendency of his BIA appeal, as evidenced by DHS's August 31, 2018 denial of parole to Petitioner and the Government's present opposition to Petitioner's § 2241 Petition. In short, Petitioner has now been detained for over nineteen months and it is presently uncertain when his already-lengthy detention under § 1225(b) will end.

Petitioner's period of detention under § 1225(b) has now become unreasonable. *Singh v. Sabol*, 2017 WL 1659029, at *4 ("the 17-month duration of Singh's detention [under § 1225(b)] has clearly reached [a] presumptively unreasonable length."); *Ahad*, 235 F. Supp. 3d at 688 (twenty-month period of detention under § 1225(b) unreasonable); *Mancia-Salazar*, 2017 WL 2985392, at *4 (eighteen months' detention pursuant to § 1225(b) unreasonable); *Singh v. Lowe*, No. 17-119, 2017 WL 1157899, at *8 (M.D. Pa. Mar. 7, 2017) (detention under § 1225(b) for sixteen months unreasonable), *appeal dismissed sub nom. Singh v. Warden Pike Cty. Corr.*, No. 17-2178, 2017 WL 5664863 (3d Cir. June 21, 2017); *Salazar v. Rodriguez*, No. 17-1099, 2017

9

WL 3718380, at *6 (D.N.J. Aug. 29, 2017) (detention under § 1225(b) for just over one-year unreasonable).

Because Petitioner's detention under § 1225(b) has now become unreasonably long, Petitioner's right to due process requires that he receive an individualized bond hearing. *Singh v. Sabol*, 2017 WL 1659029, at *4 ("§ 1225(b) [detainees] have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable."); *Mancia-Salazar*, 2017 WL 2985392, at *4 ("[T]he amount of time that Petitioner has been detained . . . has now become unreasonable and Petitioner is [therefore] entitled to an individualized bond hearing."). The Court will accordingly "order a bond hearing, governed by the procedures provided to aliens in discretionary detention under 8 U.S.C. § 1226(a)." *Mancia-Salazar*, 2017 WL 2985392, at *4; *see also Diop*, 656 F.3d at 235 ("Should the length of [the petitioner's] detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof.").

## V. CONCLUSION

For the reasons stated above, the Court grants Petitioner's § 2241 Petition. An immigration judge shall provide Petitioner with a bond hearing within twenty-one (21) days, at which the Government bears the burden of showing that Petitioner is either a danger to the community or a flight risk. An appropriate Order accompanies this Opinion.

2/25/19      s/ John Michael Vazquez
Date      JOHN MICHAEL VAZQUEZ
     United States District Judge